We'll call our next case Brooks v. Administrator, New Jersey State Prison. Mr. Leeds. Good morning. Craig Leeds, appearing on behalf of the appellant Jerome Brooks. The please of the court, I'd like to request five minutes for rebuttal. Five minutes. That's a fair amount of time. You got it. The appellant contends that he was denied his constitutional right to confront his accusers. Specifically, a witness against him, an individual by the name of Ronald Wimbush. There were numerous references throughout the trial to his statement. He was a non-testifying co-conspirator. We're familiar with the facts, Mr. Leeds. Let me ask you this. If there's no prejudice, then deficient performance is irrelevant, right? Under Strickland? Most certainly. I respect that. It's kind of going to the ineffectiveness of the appellate counsel. I was starting more with the other issue, simply because it's somewhat academic, depending on whether or not there's a violation of the confrontation clause. If we get to the point, and we assume there was a violation of the confrontation clause, and we assume that appellate counsel was inadequate and ineffective in failing to raise that, and we still say, the New Jersey appellate division was not wrong in saying there's no prejudice, then all those other things don't matter as a logical matter, correct? Well, except that, yes, the appellate division and the district court both found that it was harmless. Is that what you're asking? Where is the harm? I'm trying to ask you to first establish that it's possible for there, you wouldn't disagree, that even if there were violations of the confrontation clause, and there was ineffective assistance of appellate counsel, that you could have a circumstance where there was no prejudice, and therefore, the error was, excuse me, the fault of appellate counsel did not give rise to habeas relief. I suppose it's conceivable, but certainly not in this case, the case of Barr. There was definitely harm and prejudice to the appellant. Specifically, even the appellate division and the district court recognized that the proofs in this case really amounted to the confession. That's really what you have here, was the confession of the appellant, coupled with perhaps his trial testimony. That's all a pretty detailed confession, right? Yes, I would agree with that, except he repudiated that. But even under his repudiation of the confession, he admitted he shot by mistake, by accident, he fired a shot that hit the decedent. When you look at what the prosecutor presented as why he was alerted by Wim Bush's statement, the most, perhaps the most damning thing that was said was, I read the statement concerning the murder, and then he was cut off. By an objection. Now, when you consider that in view of what Mr. Brooks admitted that he did in fact by, alleged that he did in fact fire one shot, then what is said there, why I forget, Ben, the detective, why he reopened the investigation. It's certainly, I think what was said was no more damning than what Mr. Brooks admitted in court, that he had indeed fired a shot, and that it certainly was, just if you had stated what Mr. Brooks said in court, that that was certainly cause to include him in the investigation of the murder. Except that it's not just the testimony from Detective Bendel that we're relying on to show prejudice. It's a combination of the testimony that was elicited from Detective Bendel, coupled with the prosecutor's opening remarks, and the summation. I know the court's familiar with the facts, but if I could just very briefly, in the opening statement for Mr. Brooks, Ronald Wimbush, one of the persons in the car, one of the persons involved in this, he was apprehended, questioned, and something else, and he gave this statement, and based on that statement, the investigation was reopened. Okay, and if the statement accurately reflected what Mr. Brooks testified at trial, that statement was still enough to reopen the investigation, that you're not implying anything by that statement other than what Mr. Brooks admitted in the courtroom? Well, except that, as I said, the proofs were not overwhelming. Yes, there was the confession and his trial testimony, but he repudiated that statement, the confession that was attributed to him, and he explained his reasons. The point being that the prejudice in this case, and if I may, I can actually cite some case law to address this very point. And really, the appellate division and the district court, if respectfully submitted, misinterpreted or misapplied the facts to the case law. They basically, as the court is applying, well, there was independent evidence. Wasn't there aside from this? It seems what the court's alluding to, at least certainly after the lower court did. Yeah, nobody's applying. We're trying to ask you questions to flush out the positions that you've got. Certainly, and relying on Jones v. Bassinger, that analysis ignores the significant prejudicial effect the error can have on the jury's ability to evaluate fairly the remaining evidence. Sure, it might help if you were a little more specific. The present counsel points out, I think properly, that I wouldn't go so far as to say it's an exception, but under Crawford and Bruton, perfectly permissible for a prosecutor to elicit enough to explain that police aren't just blindly wandering off on a frolic of their own. Where exactly did the prosecutor go wrong in your mind? What was the one question or the one statement too many that was injected into the record? Certainly, we understand that the law enforcement is able to see well upon information and things of that nature. That's not what we have here. The reason being, the jury, it's uncritical. They knew there was a statement from Ms. Windershaw. They knew it. In fact, during the testimony of Detective Bender, we had it in his hand. Are you asserting that the mere fact that they knew there was a statement was enough? No. What I'm saying is, and I'll answer Judge Stern's question in a moment, but no. What I'm saying is it was the opening statement, the direct testimony, and then tying it all in at the end with an enclosing argument. The whole totality is what you're saying. Absolutely. Totality, a staged presentation. Let's take that and answer how you get to, even assuming the point you just made, which is how do we know whether that didn't color the jury's view of the confession. You don't have to just get through the deference typically given to counsel under Strickland. You have to get through a second layer of deference under AEDPA where we would have to say that it was just clearly contrary to Supreme Court precedent or an unreasonable application of Supreme Court precedent for the appellate division to look at this record and assess it and say we think a fair-minded jury looking just at the confession could have convicted. Is there any question, rhetorically of course, is there any question that the jury knew about the statement and moreover that that statement inculcated Mr. Brooks and moreover that that's what led them to him? And in fact, that's what the prosecutor says. But is it really improper to establish that I reopened the investigation on the basis of Mr. Winbush's confession? No, but the prosecutor then said they knew that he was lying. They already knew about Winbush. They already knew about Ball. It was more than just a statement. It was the contents of that statement. Although it wasn't read to the jury, they knew what was in that statement. They knew that Winbush had inculcated Mr. Brooks. Okay, but Mr. Brooks was implicated by his own testimony in court that he fired a shot by accident. Again, that's where we're talking about whether it's an independent evidence or whether or not it's the way you look at the evidence, the way in which it's looked at. As I said, the prejudicial effect the error can have on the jury's ability to evaluate fairly the remaining evidence. All right, Mr. Lee, you do reserve five minutes. We'll hear you on rebuttal and then we'll hear from Ms. Rabine. Thank you. Good morning, Your Honors. Assistant Prosecutor Elizabeth Rabine from the Bergen Prosecutor's Office on behalf of the state. I don't think it's necessary, Your Honors, to discuss How do you say your name again, ma'am? I'm sorry. Rabine. Rabine, sorry. I don't think it's necessary this morning to discuss in any length the standard of review as Your Honors are well aware of it, but I would just emphasize that we're talking about the highly deferential review of the highly deferential review of a habeas review of a Strickland analysis. And in that context Would you concede inadequacy of the performance of appellate counsel in not bringing to the attention of the court on direct review that in argument as well as in questioning the lawyer for the prosecution all but spelled out for the court, Wimbush said this guy was a shooter? I wouldn't concede that, Your Honor, because although there were objections at trial and there was certainly an issue that was raised by defense counsel, I would not concede that that was an issue that had any merit for direct review. Really? This statement? They knew about Roland Wimbush and they knew about Jerome Brooks, so when he would lie to them they knew he wasn't telling the truth and they would confront him? Isn't that just spelling it right out for the jury and saying Wimbush, who isn't here, if he were here he would finger Mr. Brooks because he fingered him in his statement. Isn't that the direct equivalent of doing that? No, Your Honor. There's a lot of context here and I think if you go through each of the what we're looking at is the logical inferences, what logic tells you in the context of this entire picture. So if we start with the first reference, which is in the opening statement, the assistant prosecutor's comment, that Wimbush was questioned and he gave a statement, then he died and the case went cold. Maybe that would have been okay. But under State v. Bankston, forget the federal law here. We're talking about ineffectiveness of counsel. Presumably appellate counsel knows New Jersey state law and Bankston and Branch seem both to make pretty clear that you can't walk up to that line without getting in trouble. You're not supposed to be under the guise of telling people what the police did or, I mean, why they did what they did next. You can't be implying to the jury that the non-testifying co-conspirator fingered the defendant who's in the dock. Isn't that the import of Bankston and Branch? That is the import of Bankston and Branch. What happened here was that Detective Bendel during the direct examination was asked about his review of the file. They had to explain how this 1983 murder went cold for 12 years. Something happened and that something is significant because that something did get us ultimately to the arrest of Mr. Brooks. So what happened during that period of time? Assume you can say something, okay? Assume you can say something, Ms. Rapine. Go past the opening, go past the direct examination, and go to the closing argument. What are we to make of that closing argument where the prosecutor chooses to say what I just quoted earlier, that the detectives had read the file, they knew about Albert Bolt, knew about Ronald Winbush, knew Jerome Brooks, and when he would lie to them they knew he wasn't telling the truth, etc. Isn't that, in effect, putting in front of the jury the content of Winbush's statement? No, Your Honor, respectfully, because what the assistant prosecutor at that point was doing was summarizing all of the evidence that had come out, which was in review of the file, the file, we don't know what was in the file, but there was a file, there was an investigation that had happened in 1983, again in 1996, more is added to it, and it's through a review of the file that the detective learns these names. It's through a review of the information in the file, which includes the statement, but in summation, Your Honor, I submit to you that those statements actually in summation are less directly connected to the Winbush statement and more generally references to the investigation itself. At this point, does New Jersey give a prosecutor more leeway on a summation? Absolutely, yes, Your Honor. After the defendant has testified, was there any suggestion raised, was something improper about what the detective had done that the prosecutor is replying to in the summation? Was there an objection about the summation? No, was there anything that came out in the defendant's case or in his testimony that would have implied wrongdoing on the detective's part that fairly perhaps the prosecutor is responding to in summation? Well, absolutely, Your Honor. The assistant prosecutor was responding to the defendant's claim that he had been badgered and lied to and made promises during the interrogation. And he was also, I want to just take you back very quickly, I think it's important to break down these two statements that Detective Bendel made during direct examination because I think the context is really important. First of all... Before you give me context, maybe you can answer, say what you want to say in this context. This is from Branch. The hearsay rule is violated if the officer states or suggests that some other person provided information that linked the defendant to the crime. Now, are you saying that that direct examination did not suggest that Wimbush linked Brooks to the crime? Brooks was certainly linked to the crime through the investigation and he was linked to the crime through the statement of Wimbush. That's correct, but the case bill also allows the  to introduce some very, very limited information in the course of the investigation to explain why the police did what they did. This is also from Branch, Ms. Rabine. Even saying based on information received is apparently enough of a problem unless it is, quote, to rebut a suggestion that the police officers acted arbitrarily in pursuing the defendant and only if use of the phrase does not create an inference that the defendant has been implicated. The concern there is whether the defendant has been implicated and specifically whether the defendant has been, whether that individual has given information that suggests that there is some additional information that the police have of that individual's guilt. Detective Bendel, initially when he was asked by the assistant prosecutor about the case, he was developing the history, 1983 cold case, 1996, there were some objections and he stopped that line of questioning. And then subsequently, and this is why I say these are two separate things and the context matters, is that Detective Bendel was explaining the interrogation of Mr. Brooks and he told the defendant that he was involved. Evidently Branch doesn't, the Supreme Court of New Jersey doesn't even care about that because they say, if it even suggests. But maybe it's a better thing to ask you, does it even matter to the state? Can you win even if it was a rank violation of the hearsay rule and the Confrontation Clause? Can the state still win? We do, Your Honor. Clearly, and I think, as was discussed earlier, the evidence really is overwhelming in this case in terms of the, we have a confession from this defendant, we have this defendant's testimony at trial in which he admitted to being at the scene. And I think the most, the heart of this, of the issue with Brooks's, I'm sorry, with Winbush's statement is the logical inference that you could draw from a reference to his statement that is at best that Brooks was at the scene, that Bolt was at the scene, that Winbush was at the scene. You've just gone back to the ground that I was encouraging you to get off of, which might be a loser for you, right? But even if it were a loser for you, on the ground, your stronger ground, which is it doesn't matter, because he confessed, please speak to Mr. Leeds' point that you can't separate out the references to Winbush from the confession because they would color the jury's view. He's quoted this case a couple of times that says it colors the view. What's your response to that? The jury had the opportunity to review at least a portion of the statement, of the defendant's statement. At that time, the stenographic record of the transcript was recorded, or at least acknowledgement  They also were able to listen to the defendant testify at trial. And they listened to his outrageous version of events that was completely unbelievable. He conceded, however, that he was at the scene, that he had the gun in his hand, that he participated in this crime. And whether or not Mr. Winbush added anything to that is important. And I know your Honor is trying to get me away from this, but I think it's important to make the point that the most information that Winbush could have given the jury is that this individual, Mr. Brooks, was at the scene. That isn't the most information. The point Mr. Leeds is making, and the point that's a little bit tough because it's in the prosecutor's closing by implication, is Winbush fingered Brooks. Not just that he was at the scene. Brooks was there at the scene of the crime. True enough. True enough. But you're missing what I take to be Mr. Leeds' argument and what I'm trying to get you to respond to. And that is, if it is the case, actually I take that back, I'm trying to get you not to respond to it. I deal with the prejudice problem. But since you still want to talk about this, the argument I understand Mr. Leeds to be that that is what the jury could reasonably have understood from what was being said. So it doesn't seem to advance the state's cause here to say the most that could have been assumed or understood was that Brooks was at the scene. Because they're making a pretty good argument on the other side, but that is not the most you could understand. You could understand a lot more is being implied by what the prosecutor chose to say in closing argument. But I do have to respond to that, Your Honor, because the testimony in trial from Brooks himself was that they were 75 feet away from the car that Wynbush stayed in. That it was pitch black outside. That it was dark. And that Wynbush, there was no way that Wynbush could have seen what happened. So the fact that Brooks put himself at the scene of the crime, regardless of whether he pulled the trigger or regardless of whether the trigger was pulled while the gun was in his hand, Wynbush couldn't have added any additional detail to that scenario. So that's important because Brooks put himself at the scene. Brooks put himself involved in the crime. And Wynbush's, an offhand reference to Wynbush's statement putting Brooks at the scene of the crime? Yeah, he was there. He confessed to it. What about the EDPA standard of review? What about the EDPA standard of review? Well, I think, so specifically on the harmlessness, I think it's important that the court cannot grant relief unless the harmlessness determination itself is unreasonable. That's what you wanted me to say, I think, earlier, Judge Jordan, to some degree. What I want you to say, it just appears to me to be maybe the State's better argument. So if you want to say it, that's great. It is a better argument, but I do think it's really important to point out that the testimony does fax. Do you want us to forget it? I'm sorry? Do you want us to forget it? I don't want you to forget it. I don't believe that there was a confrontation violation here, but I do recognize that there is some language in the case law that seems to give a blanket rule that any reference whatsoever to a non-testifying witness's statement is inadmissible. And I think that the context here and the rationale, the reason for these questions that were asked and for these statements that were made is really justifiable, and I don't think that the assistant prosecutor was improper in doing what he did. But certainly, I started my argument by pointing out that this is a deferential review of deferential review because I believe that the appellate division's decision and the I would submit overwhelming evidence of this individual's guilt through his statement, through his testimony at trial, which I think if you read, it's just absolutely unbelievable. So to suggest that a statement by another individual who Brooks said was there, Winbush was there, Brooks was there, Brooks tells us that Winbush was there, but Brooks also tells us that Winbush didn't see anything. Admirably, you're not giving any ground, which I respect, but this may or may not help. When the district court said that there was no confrontation of cause violation, the phrase that was used because the statement, that is what was elicited about Winbush, did not create an inescapable inference. That's right. The petitioner was guilty. Does that come from New Jersey law, or I can't locate the inescapable? Oh, that's an excellent question, Your Honor. I believe that that comes from Bankston, and I believe that that's in the context of when it talks about the logical or inescapable. I think it's in the appellate division decision that that language is quoted. Okay. Thank you, Ms. Rabine. Thank you, Your Honor. Mr. Leeds, we'll hear your rebuttal. Okay. At the outset, yes, inescapable comes from Bankston. The State, in its argument, said that there may have been some offhand reference. This was not an offhand reference. This was much more. It was a continuing theory and theme of the State's case, from the beginning, in opening and they were going to get the guys that were responsible. It wasn't a simple, and I'm going to digress a little bit, because the appellate division and the district court also said, well, at best, there was an association. That's just not, that flies in the face of the evidence that was presented through the testimony of Detective Bendell, the State's opening, and then, as Judge Jordan pointed out, in the summation, where, I mean, it's really quite something. They knew. You're on your better ground when you're arguing that point, but why don't you shift to the ground that's a little tougher for you and take on the prejudice prong here and answer whether Brecht's harmless error standard is equivalent to Strickland's prejudice standard. I mean, are they one and the same? I'm sorry. Why don't you pose the question? Right. Harmless error. Is it the same standard as the prejudice standard under Strickland, or is it something different? Well, in a sense, it's different, and it's also the same. The effective assistance of counsel under Strickland, counsel did something or did do something wrong, and then whether or not there was prejudice. The harmless is a little bit different, but in a sense, again, it's six of one, the other doesn't matter. Okay. So by that, you're saying they're the same, sixes, right? Mm-hmm. So if that's the case, how do you win? If under the doubly deferential view that we have to give of performance of counsel given the EDPA standard of review and the Strickland standard, how do we get to harmful, that is, reversible, that is, habeas granting error? And as I was saying, the first question the court has to determine is whether or not there was a violation of the Confrontation Clause. And I'm just saying, give it to you. For purposes of argument, say we agreed with you. Okay. This is a rank violation of the New Jersey law under Bankston. It's problematic under federal law. Assume we gave that to you. How do you win? Okay. The defendant, the appellant, at the trial level testified. He explained the circumstances under which he gave the alleged confession. So you have the confession that both of the lower courts relied on, the state court and the district court relied on that confession in order to say there was independent evidence, meaning there was no, it was a homicide because aside from this, there was independent evidence. The independent evidence was the confession and his trial testimony. Because of that, because of his giving testimony, because the state relied primarily on his confession and his testimony, his credibility was the main issue. And by introducing Wilbush, that statement that later on the prosecutor can argue in summation, they knew he was lying. That world lied based on what the law enforcement knew. And by the way, it's not just the statement, but it was also superior knowledge. In other words, the- Let me hold you to the standard for a minute, Mr. Leeds. This is the appellate division's statement. Quote, even if the detective's statements at trial respecting his conversations with Wilbush violated the Bankston principle, in view of defendant's confession and his testimony at trial, the error was harmless. Unquote. Now, under AEDPA, you have to demonstrate to us that that conclusion, that assessment of the record, is either contrary to or an unreasonable application of controlling Supreme Court precedent. What can you point us to that meets that high standard with respect to that statement from the appellate division? Jody Bessinger, the analysis that I talked about before in terms of the prejudicial effect. There's also a case out of the Third Department, the Washington case, for example. The Washington, the Secretary of Pennsylvania Department of Corrections. In that case, there was one, two, three, four individuals that- It's got to be U.S. Supreme Court precedent. In that case, the Third Circuit also, this court also, referred to Vasquez v. Wilson, which was a Third Circuit presidential case. And again, these cases relied on U.S. Supreme Court cases. Bruton, Gray, Richardson. These were interpretations of the U.S. Supreme Court case law. Well, concretely, though, if you say that the prejudice was an undermining of his credibility, I assume you're referring to his explanation of what happened at the scene, which is not denying that he wasn't one of the shooters, although the offense was accident. I'm sure you've heard that. We're properly instructed on it. No, it's not just his statement. It's also his trial testimony in repudiating his confession. All of those things contributed to the defendant being deprived of his right to confront the witness, in this case, Windbush, and resulted in a deprivation of his constitutional rights. Okay. Thank you very much. Thank you, Ms. Rabine. We've got the case under advisement. And we'll decide as soon as we reasonably can get back to you. We'll recess court. Thank you. Thank you.